UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>JOSHUA ACOFF,<br><br>*Defendant*. | No. 3:15cr157 (MPS),<br><br>No. 3:11cr179 (MPS)<br><br>No. 3:09cr073 (MPS) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

On August 1, 2016, Defendant Joshua Acoff was sentenced to 84 months of imprisonment in 3:15cr157, to be served consecutively with the sentence of 12 months of imprisonment imposed upon revocation of his supervised release in another case, 3:09cr73 and to be served concurrently with the sentence of 12 months imprisonment to be served upon revocation of his supervised release in 3:11cr179 – for a total effective sentence of 96 months imprisonment. (ECF No. 32-2 at 68 in 3:15cr157, ECF No. 44 in 3:11cr179.)  He also was sentenced to a four-year term of supervised release in the main case, 3:15cr157.  (ECF No. 28.)  He is presently incarcerated at the camp facility at USP Lewisburg in Pennsylvania.

On May 4, 2020, Mr. Acoff filed a motion under 18 U.S.C. Sec. 3582(c)(1)(A) for a reduction in his term of imprisonment and immediate release from custody in 3:15cr157, due to the dangers posed by the COVID-19 virus as a result of his underlying health issues, morbid obesity, and a congenital heart condition.  (ECF No. 32.)  On May 18, 2020, he filed a supplemental motion for release in 3:15cr157.  (ECF 42.)  He filed similar motions in his other criminal cases.  *See* ECF No. 59 and 60 in 3:09cr73 and ECF No. 47 and 48 in 3:11cr179.  Mr. Acoff filed a copy of the request for compassionate release he submitted to the Warden (ECF No. 32-1), the Warden's denial dated April 9, 2020 (ECF No. 42-1), a letter addressed to the court (ECF No. 42-2), his medical records

from the Bureau of Prisons ("BOP") (ECF No. 34), and his programming/disciplinary history (ECF No. 36.). The Government filed a brief in opposition to Mr. Acoff's motion on May 11, 2020. (ECF No. 39.) On May 12, 2020, the Court held a telephonic conference, after which the Court requested that the United States Probation Office conduct a review of Mr. Acoff's proposed release plan. On May 27, 2020, the Court held another telephonic conference. In addition to counsel, a U.S. Probation Officer, Mr. Acoff, his mother, and his girlfriend were on the call. For the reasons that follow, I grant Mr. Acoff's motion for a reduction in his terms of imprisonment and immediate release under Section 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Before the First Step Act was enacted in 2018, this provision did not provide for the filing by the defendant of a motion with the Court, leaving the decision whether to file a motion seeking an order of "compassionate release" exclusively to the Director of the BOP. The First Step Act amended the statute to the text shown above. The Sentencing Commission, however, has not updated its policy statement applicable to Section 3582(c)(1)(A) to take account of the defendant's right, after exhausting remedies, to file a motion with the Court. *See* U.S.S.G. § 1B1.13. I therefore agree with several district courts that have addressed this issue and found that the provisions of U.S.S.G. § 1B1.13—though still providing useful guidance—are obsolete, and thus that the statutory language requiring

2

that the sentence reduction be "consistent with applicably policy statements by the Sentencing Commission" is no longer operative. *See, e.g., United States v. Rodriguez*, 2020 WL 1627331 *4 (E.D. Pa. April 1, 2020).

Therefore, I may reduce Mr. Acoff's three terms of imprisonment if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his terms of imprisonment.

I have previously found the statutory exhaustion requirement to be mandatory and not excusable by the Court. *United States v. Nathaniel Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020). Mr. Acoff has satisfied that requirement. He submitted both his petition to the Warden for compassionate release due to his health concerns and the COVID-19 pandemic (ECF No. 32-1) and the Warden's April 9, 2020 denial of the request. (ECF No. 42-1 at 1.)

Although it is a close call, I also find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons" warrant a reduction of his three terms of imprisonment to time served and his immediate release from BOP custody.

To begin with, Mr. Acoff's documented medical history places him at increased risk of serious illness or death should he contract COVID-19. He has submitted medical records showing that he suffers from severe obesity. (ECF No. 34-1 at 11.) As of March 24, 2020, his body mass index was 43. (ECF No. 34-1 at 10.) According to the Centers for Disease Control and Prevention, "[s]evere obesity, defined as a body mass index (BMI) of 40 or above, puts people at higher risk for complications from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last viewed May 27, 2020). He also has submitted medical evidence documenting that he

3

suffers from congenital pulmonic stenosis[1] and regurgitation.  (ECF No. 34-1 at 11.)  The CDC also concluded that serious heart conditions may put people at higher risk for severe illness from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions.  Due to his incarceration, Mr. Acoff is unable to safeguard against infection, and prisons are associated with high transmission probabilities for infectious diseases like COVID-19.

Other courts in this Circuit have held that a defendant's pre-existing health conditions, including obesity and heart conditions, combined with the increased risks of COVID-19 in prisons, constitute "extraordinary and compelling reasons" warranting relief.  *See, e.g.*, *United States v. Handy*, No. 3:10cr128(RNC), 2020 WL 2487371, at *1 (D. Conn. May 14, 2020) (finding "extraordinary and compelling reasons" in light of defendant's heart condition, hypertension and obesity); *United States v. Delgado*, No. 3:18cr17(VAB), 2020 WL 2464685, at *6 (D. Conn. Apr. 30, 2020)(same, where "Mr. Delgado has demonstrated that his obesity and sleep apnea place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated.").

Consideration of the Section 3553(a) factors, however, makes this motion a close call.  At age 31, Mr. Acoff has a substantial criminal record, and appears to have spent the bulk of his adult years as a drug dealer.  He now has three federal convictions, two for drug distribution and one for being a felon in possession of a firearm.  His record suggests that he poses a substantial risk of recidivism.  On the other hand, he has now served more than 56 months, which is the bulk of the 96-month sentence I imposed; this appears to be a longer period of incarceration than he ever served before.  The sentence has thus gone more than half way towards its goals – which

---

[1] According to Wikipedia, pulmonary valve stenosis is a heart valve disorder.
https://duckduckgo.com/?q=congenital+pulmonic+stenosis&t=chromentp&atb=v197-1&ia=web

4

included protecting the public, deterring Mr. Acoff, and promoting respect for the law. His release date shown on the BOP website is July 9, 2022.[2] So the question is whether the Section 3553(a) factors served by keeping him incarcerated for the additional 25 months or so left on his prison sentence – which include additional protection of the public from the risk of recidivism he poses – should outweigh the substantial risk of serious illness or death he faces from COVID-19 while incarcerated. I conclude that they should not, both because the strict conditions of release I will impose and the close supervision by the Probation Office I will require can reduce somewhat the risk of recidivism and because the COVID-19 risk likely poses an even greater danger to his health and safety than his release would to that of others. Again, I acknowledge that this is a close call, and I am aware of the possibility that, should he return to his old ways and, for example, distribute a fatal dose of heroin or fentanyl on the street, my judgment will be proven tragically wrong. Leaving him in prison for the next twenty-five months, however, could also end in tragedy, as it has for the 64 inmates who have died while in BOP custody in the past two months. See https://www.bop.gov/coronavirus/ (last checked on 5/27/2020). Even if he does not die from a COVID-19 infection, he risks becoming seriously ill, with what may be permanent consequences to his health. *See, e.g.*, https://www.healthline.com/health-news/what-we-know-about-the-long-term-effects-of-covid-19. And given that he has already served more than half of his sentence, my conclusion is that, under all the circumstances, requiring further prison time is not worth the risk of serious harm or death that it entails.

After considering carefully the Section 3553(a) factors, combined with Mr. Acoff's health issues and current conditions of confinement, I find that extraordinary and compelling reasons warrant a reduction of the term of imprisonment in each of his three sentences—the 84

---

[2] See https://www.bop.gov/inmateloc

months imposed in 3:15cr157, the consecutive 12 months imposed in 3:09cr73, and the concurrent 12 months imposed in 3:11cr179—to a sentence of time served, under 18 U.S.C. § 3582(c)(1)(A).  His motions for compassionate release in the three cases, ECF No. 32 (motion) and 42 (supp'l mtn) in **3:15cr157**, ECF No. 47 (motion) and 48 (supp'l mtn) in **3:11cr179**, ECF No. 59 (motion) and 60 (supp'l mtn) in **3:09cr73** are **GRANTED** and his terms of imprisonment in each of the three cases are reduced to time served.  **Accordingly, I hereby order that Joshua Acoff (Register Number: 17749-014) be released from BOP custody on the morning of Thursday, June 4, 2020**.  Mr. Acoff shall serve a period of supervised release equal to the unserved portion of his original term of imprisonment, plus the four-year term of supervised release previously imposed.  Mr. Acoff was scheduled to become eligible for release from prison on July 9, 2022 (having served 85% of his 96-month term of imprisonment).  Therefore, he shall be on supervised release until that date, followed by an additional four years of supervised release (which was the originally imposed term).  All of the conditions of supervised release listed in his original Judgment, ECF No. 28 in 3:15cr157, shall apply throughout the period of supervised release.  In addition, the following additional special conditions shall apply:

    **Upon release on June 4, 2020, Mr. Acoff shall travel as soon as possible and in no more than 24 hours to his address in Connecticut.  He shall be in home confinement for six (6) months, to be enforced by location monitoring.**  The location monitoring shall be by radio frequency unless otherwise directed by the U.S. Probation Office. The defendant must abide by all technology requirements. The defendant shall pay all or part of the costs of participation in the location monitoring program as directed by U.S. Probation Office and approved by the Court.  The defendant is restricted to his residence at all times except for

employment, medical, substance abuse, or mental health treatment, or other activities as pre-approved by the U.S. Probation Officer.

**During the first fourteen (14) days of his home confinement, he must self-quarantine,** *i.e.*, **self-isolate at home by living, by himself, in a separate room of the house or apartment building.** (The self-quarantine order within the home is for the protection of his family members and the public.) During the first fourteen days of his period of home confinement, he shall remain inside the home at all times, except for medical reasons, which medical reasons must be communicated to the U.S. Probation Office, if at all possible, before he attempts to leave the home. Following that fourteen-day period, he shall remain in **home confinement for an additional one hundred sixty six (166) days**. After the 14 days of self-quarantine have expired, he shall remain inside the home at all times during the remaining 166 days of home confinement, except for medical reasons, searching for employment (*i.e.*, actual job interviews), or maintaining employment; in each case, he must communicate with the Probation Officer before leaving the home, except in the case that a documented medical emergency prevents him from doing so.

Even when he is out of the home for a reason permitted by this order, the defendant must abide by a curfew. Specifically, the defendant is placed on curfew from 9 pm until 6 am, 7 days per week. The Probation Officer supervising Mr. Acoff may not modify or permit exceptions to this portion of the order without Court approval.

As soon as possible after the fourteen-day period of quarantine, he shall also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons, providing a copy of such

communication to the assigned Probation Officer.

In addition, the defendant must attend at least four sessions of Support Court as an observer, and is encouraged to apply to Support Court thereafter.  Such attendance may be by remote means if Support Court is being conducted remotely.  Finally, the Court hereby schedules a compliance review hearing in this case for **June 30, 2020** at noon.  The hearing will be held by telephone unless the Court orders otherwise.

Defense counsel shall transmit a copy of this order to appropriate BOP staff at USP Lewisburg as soon as possible.

IT IS SO ORDERED.


Dated: Hartford, Connecticut
        May 29, 2020


                                                        _____/s/_____
                                                        Michael P. Shea, U.S.D.J.